UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BASIL A. FRYE,           )
                         )
        Plaintiff,       )
                         )     No. 09 C 977
v.                       )
                         )     Magistrate Judge Cole
THOMPSON STEEL COMPANY, INC., )
a Massachusetts Corporation, )
                         )
        Defendant.       )

## MEMORANDUM OPINION AND ORDER

Basil Frye worked for Thompson Steel at its Franklin Park, Illinois plant for 42 years, from December 9, 1964 to until May 11, 2007. Toward the end of his career, he suffered two on-the-job injuries, a strain in his right shoulder and a contusion to his left leg. As a result, he received two workers' compensation settlements totaling nearly $84,000 for "PPD" or "permanent partial disabilities." He continued working for Thompson Steel until it closed its Franklin Park plant in 2007, at which time he opted to take early retirement. Under the option he selected, he was to receive $688.13 per month beginning September 1, 2007.

Once Thompson Steel calculated the total amount of Mr. Frye's workers' compensation settlements, it informed Mr. Frye that it would be offsetting his pension payments by the amount he received. The effect of the offsets was to defer his pension payments for eight years and two months. Mr. Frye unsuccessfully challenged this determination through the appropriate administrative avenues. Mr. Frye sued, alleging Thompson Steel wrongfully denied him benefits under its Retirement Plan for Salaried Employees ("Plan"). The court has jurisdiction under 29 U.S.C.A. § 1132(a)(1)(B) because Thompson Steel's Plan is an "employee pension benefit plan" as that term

is defined under Section 3(2)(A) of the Employee Retirement Income Security Act ("ERISA") of 1974, as amended, 29 U.S.C. §1002(2)(A). Both parties are seeking summary judgment based on the administrative record.

Workers' compensation offsets are not uncommon and do not violate ERISA. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504 (1981). Because Article 9 of the Plan confers the Plan's administrators with discretion to interpret the provisions of the Plan, the question is whether Thompson Steel's determination that such an offset was appropriate under the Plan was "arbitrary and capricious."[1] *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Wetzler v. Illinois CPA Soc. & Foundation Retirement Income Plan,* 586 F.3d 1053, 1057 (7th Cir. 2009).

Under the arbitrary and capricious standard, an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language. *Wetzler,* 586 F.3d at 1057. It is a highly deferential standard. An administrator's determination will be upheld unless it is "'downright unreasonable.'" *Fischer v. Liberty Life Assur. Co. of Boston,* 576 F.3d 369, 376 (7th Cir. 2009). So long as it is possible to offer a reasoned explanation for the determination, based on the evidence, plan documents, and relevant factors that encompass the important aspects of the problem, the determination will stand. *Wetzler.* 586 F.3d at 1060; *Fischer,* 576 F.3d at 376. But, by the same token, the "arbitrary and capricious" standard is not a "rubber stamp," *Majeski v. Metropolitan Life Insurance Co.,* 590 F.3d 478, 483 (7th Cir. 2009), and a denial of benefits will be overturned if the administrator fails to provide specific reasons for rejecting

---

[1] Article 9 of the Plan provides that the administrators will have "full power, authority, and discretion to interpret or construe this Plan, to determine all questions of eligibility and of the status and rights of Participants and any other persons hereunder, and to decide any disputes arising hereunder . . . ." (Administrative Record "AR" 00140).

evidence and denying the claim. *Black v. Long Term Disability Insurance*, 582 F.3d 738, 745 (7th Cir. 2009); *Love v. National City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir. 2009)("...ERISA requires plan administrators to communicate specific reasons for a denial of benefits to the claimant and address any reliable evidence of eligibility put forward by the claimant.").

As the Seventh Circuit stressed in *Majeski*, review under the arbitrary and capricious standard "turns on whether the plan administrator communicated 'specific reasons' for its determination to the claimant, whether the plan administrator afforded the claimant 'an opportunity for full and fair review,' and 'whether there is an absence of reasoning to support the plan administrator's determination.'" 590 F.3d at 484. It is arbitrary and capricious for a plan administrator to ignore significant evidence, and sound discretion requires a plan administrator to "'address any reliable, contrary evidence submitted by the claimant.'" *Id.* See also *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).[2]

---

[2] These constraints on decision-making are not unique to Plan Administrators. Comparable, if not more onerous obligations are imposed on judges at all levels of the federal system and on administrative law judges in Social Security cases. The requirement that administrative law judges cannot simply ignore relevant evidence is a basic one. *See, e.g.,. Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). And the requirement that judicial decisions be supported by some explanation finds frequent expression in the cases. *See e.g., United States v. Marion*, 590 F.3d 475 (7th Cir. 2009); *Szmaj v. AT & T*, 291 F.3d 955, 956 (7th Cir.2002); 768 F.3d 826, 834 (7th 1985). *Compare General Electric v. Joiner*, 522 U.S. 136, 146(1997)(expert opinion must be connected to data by more than the expert's *ipse dixit*); Henry M. Hart, Jr., Foreword: The Time Chart Of The Justices, 73 Harv.L.Rev. 84, 98-99 (1959)("(In the end, however, *ipse dixits* are futile as instruments for the exercise of 'the judicial Power of the United States.").

This is not to say that the standards governing decision-making by Plan Administrators are as exacting as those governing decision-making by administrative law judges who are required to build a "logical bridge" from the evidence to their conclusion. *Denton v. Astrue*, _F.3d_, 2010 WL 652979 (7th Cir. 2010). The point rather is that Plan Administrators cannot, consistent with the prohibition against arbitrary and capricious decision-making, decide cases on the basis of hunches or ineffable intuition or without regard
(continued...)

3

Thompson Steel based the offset on Article 4, Section 4.8 of the Plan. Under that provision:

> Any amount paid to or on behalf of any Employee or Pensioner on account of injury or occupational disease causing disability in the nature of permanent disability for which the Company is liable, whether pursuant to Workers' Compensation or Occupational Disease laws, . . . shall be deducted from or charged against any regular pension payable under this Plan . . . .

(AR 00221-222). Mr. Frye's worker's compensation settlements were based on "94 weeks PPD (40% loss of the use of the right arm)" and "75.25 weeks PPD (35% loss of the use of the left leg)." (AR 0073; 0074). The parties agree that "PPD" stands for permanent partial disability. So, for Thompson Steel, this was a "disability in the nature of permanent disability." It seems simple enough up to this point. Mr. Frye did, indeed, receive the $84,000 on account of what was called a permanent partial disability, which would seem to qualify, in ordinary language, as something "in the nature of a permanent disability."

But Mr. Frye argues that Thompson Steel's interpretation either ignores or flies in the face of the definition of "disability" in the Plan. Just as the patentee can be his own lexicographer, Thompson Steel can set out definitions of terms in the plan and can define terms in any manner it chooses. The meanings of terms need not even track the meanings courts have ascribed to similar language in the statute. *Trombetta v. Cragin Federal Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1440 (7th Cir. 1996). But once it sets out definitions, it must follow them. *Tate v. Long Term Disability Plan for Salaried Employees of Champion Intern. Corp. No. 506*, 545 F.3d 555, 560 (7th Cir. 2008).

In the instant case, the definitions of certain terms in the Plan are set out in Section 1. At

---

²(...continued)
for significant evidence that is presented by the claimant.

4

Section 1.9, the Plan provides that the terms "'[p]ermanently incapacitated', 'permanent incapacity' and 'disability' shall have the meaning stated in section 3.4," (AR 00213), which is entitled "Disability Retirement" and provides:

> An Employee shall be deemed to be permanently incapacitated (as the term "permanently incapacitated" is used herein) and shall be retired only (I) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit and (ii) if such total disability shall have continued for a period of six consecutive months and, in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life....As used herein, the terms "disability" and "disabled" shall have the same meanings as the phrases "permanent incapacity" or "permanently disabled", respectively.

(AR 00216).

Mr. Frye submits that he doesn't have a "disability" as the term is defined in Sections 1.9 and 3.4 because he is not totally disabled from engaging any type of employment and therefore the offset for a settlement for a "disability in the nature of permanent disability" was arbitrary and capricious. When Mr. Frye challenged the offset with a contention along these lines during the administrative process, Thompson Steel explained in its determination letter that:

> Section 3.4 of the Plan provides a definition of "permanently incapacitated" for the purposes of determining whether an employee is entitled to that Disability Retirement. The Committee has consistently interpreted and applied this definition only to determine eligibility for a Disability Retirement and not to determine the applicability of an offset for "permanent disability" under Section 4.8. The characterization of monies received on account of "permanent disability" under Section 4.8 is a function of the payment, itself, not an unrelated eligibility definition under the Plan. In your case, the Illinois Workers' Compensation Commission's characterization of the monies you received as a payment for a permanent partial disability mandates the offset to your pension benefits under Section 4.8

(AR 0079).

The use of the word "mandates" here is notable because in its brief Thompson Steel asserts:

5

> . . . the Company does not argue here that the Court is bound by a determination of the [Workers' Compensation] Commission. It is not. The Company merely relies on the characterization of Plaintiff's injuries before the Commission to show that the Company was not "downright unreasonable" in concluding that the injuries were "*in the nature of* a permanent disability. (*Response*, at 6) (emphasis in original).

By explaining that its determination was "mandate[d]," Thompson Steel was clearly stating that the Commission's determination left no room to render any other decision than the one it did. It cannot change that indisputable fact simply by disavowing it in a brief and advancing a theory that contradicts the plain language of the letter.

Instead of referring to the definition of "disability" set out in the Plan, Thompson Steel followed the definition of disability employed by the Illinois Workers' Compensation Commission in its awards to Mr. Frye. Thompson Steel continues to maintain that Mr. Frye's Worker's Compensation settlements for permanent partial disabilities were amounts paid on account of disabilities "in the in the nature of permanent disability," and that the definition provided in Section 3.4 by way of Section 1.9 does not apply because the section only pertains to disability retirements.

Section 3.4 may apply to disability retirements, but the definitions in Section 1 are not so limited. The section maintains the definitions in the prior version of the Plan – where disability was not defined – and goes on to say that "the following terms shall have the meaning specified below. References in this Schedule C to sections shall refer to sections of this Schedule C unless otherwise clearly indicated." And the definition of "disability" explicitly refers to Section 3.4, even though that section deals with disability retirements. Moreover, the definition of "disability" is not just some isolated case. Throughout Section 1, the Plan refers to succeeding sections for definitions: Sections 1.1, 1.2, 1.5, 1.7, 1.11, 1.13. (AR 00212-13). Thompson Steel's position that the preamble to the definition section does not mean what it unambiguously says essentially renders the entire section

superfluous. Even with the discretion it has under the Plan, it can't ignore basic rules of contract interpretation; it has to give effect to all terms in the Plan. *Bland v. Fiatallis North America, Inc.*, 401 F.3d 779, 783 (7th Cir.2005). *Cf.*, *A.T.N., Inc. v. McAirlaid's Vliesstoffe GmbH & Co. KG*, 557 F.3d 483, 485 (7th Cir. 2009)(a court has to assume every term and provision in an agreement is there for a reason).

Thompson Steel's brief has not amplified its position much beyond its letter to Mr. Frye. It essentially ignores the obvious interpretative problem with its position, *(See Memorandum in Support of Thompson Steel's Motion*, at 9-10; *Thompson Steel's Response*, at 3), and it offers no explanation for its contention that the definitions in Section 1, which are said to apply throughout Schedule C, do not apply to Section 4.8. But simply ignoring the fact that the Plan says the definitions in Section 1 are to apply to terms throughout Schedule C – including Section 4.8 – does not make Thompson Steel's interpretation reasonable. Quite the contrary. A determination that ignores the plain language of a plan is clearly arbitrary and capricious. *Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007); *Hess v. Hartford Life & Acc. Insurance. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). Not only has Thompson Steel's brief done that here, but it has also ignored the argument that the Section 1 definitions apply throughout Schedule C. Its determination must be vacated.

Citing *Sisto v. Ameritech Sickness and Accident Disability Benefit Plan*, 429 F.3d 698 (7th Cir. 2005), Thompson Steel submits that this case is really nothing more that Mr. Frye raising a point of disagreement with its interpretation. (*Response*, at 3). There, the Seventh Circuit did say that "raising debatable points" does not entitle a plaintiff to a reversal of a determination. 429 F.3d at 701. But in *Sisto*, the determination was clearly reasonable. The defendant chose to interpret

7

"work duties" as not including attending to personal needs during the day, so a slip and fall in the restroom was not an accidental injury incurred in connection with performance of work duties. The plaintiff's argument for a broader interpretation was not dictated by the terms of the plan. Significantly, unlike "disability" in this case, "work duties" was not defined in the plan in *Sisto*, allowing the defendant to interpret it as it saw fit, as long as that interpretation was reasonable. Because the Plan in this case provides a definition of disability, Thompson Steel is not afforded the same luxury. It must follow the terms of the Plan and cannot deviate from those definitions.

Thompson Steel also submits that it has applied this particular interpretation consistently to all workers situated similarly to Mr. Frye. (*Memorandum in Support of Thompson Steel's Motion*, at 7). In support of this argument, it relies on *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir. 1980). The court in *Wardle* did take notice of consistent treatment of similarly situated individuals under a plan, but the company in that case provided *evidence* of consistent treatment. 627 F.2d at 828. Thompson Steel, however, cites to no *evidence* of consistent treatment. (*Defendant's Local Rule 56.1(a)(3) Statement*, ¶29). It merely refers to the determination letter it wrote to Mr. Frye informing him that it consistently applied the offset provision in the manner it was applying it to him. That, of course, is not evidence of consistent treatment, as Justice Holmes held in *A.B. Leach & Co. v. Peirson*, 275 U.S. 120, 128 (1927): "A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts." And so in the last analysis the only "evidence" is the letter and that is hearsay, *United States v. Leahy*, 464 F.3d 773, 797 (7th Cir. 2006) and thus inadmissible under Rule 56.

8

*Gunville v. Walker*, 583 F.3d 979, 985 (7ᵗʰ Cir. 2009).³

So it must be concluded that Thompson Steel's decision to offset Mr. Frye's benefits by the amount he received in his workers' compensation settlements was arbitrary and capricious. Courts that find a plan administrator's denial of benefits to be arbitrary and capricious may either remand the case for further proceedings or reinstate benefits. *Leger v. Tribune Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 835 (7ᵗʰ Cir. 2009); *Tate,* 545 F.3d at 562-63. In this case, a remand is appropriate because it remains to be determined whether Mr. Frye meets the applicable definition of "permanent disability." Because Thompson Steel simply equated the "permanent partial disability" of workers' compensation law with disability under the terms of the Plan, there was no occasion to make this determination.

A final point. Thompson Steel does not exactly make the argument, but perhaps hints at by repeating and italicizing the phrase, "in the nature of," is that under any definition – workers' compensation law or the Plan's definition – Mr. Frye's awards were on account of injuries causing disability *in the nature of* a permanent disability. Of course this would mean that Mr. Frye's injuries

---

³ The defendant has not shown that the letter satisfies the requirements of Rule 803(6), Federal Rules of Evidence. On its face, it cannot be said that it is the kind of memorandum, report, record or data compilation of events, conditions, opinions or diagnoses based upon "information transmitted by, a person with knowledge," and that it was the regular practice of that business activity to write such a letter containing representations about past conduct and the way in which the plan has been construed and administered. The declarant is the author of the letter, and the defendant has not shown the basis on which the representation of past conduct was based. If it was based on what some unidentified person told him, the letter is inadmissible even if it otherwise qualified under Rule 803(6) because it contains hearsay within hearsay and is thus barred by Rule 805, Federal Rules of Evidence. Rule 805, which applies to records otherwise qualifying under Rule 803(6), requires that where there are multiple levels of hearsay, each level must qualify as an exception in order for the document to be admitted. *United Sates v. Vigneau,* 187 F.3d 70, 76 (1ˢᵗ Cir. 1999); 4 Weinstein's Evidence, § 803.08[2] at 803-58.2. Thus, merely because a document is itself a business record under 803(6) does not mean that it is admissible if it contains multiple hearsay. *See Certain Underwriters v. Sinkovich,* 232 F.3d 200, 205 (4ᵗʰ Cir. 2000); *United States v. Patrick,* 959 F.2d 991 (D.C. Cir. 1992); *United States v. Lieberman,* 637 F.2d 95, 100 (2d Cir. 1980). *TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 729 (10ᵗʰ Cir. 1993).

to his arm and leg would have to amount to being "in the nature of" being "totally disabled . . . so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit . . . ." pursuant to Sections 1.9 and 3.4. That remains to be seen as well.

## CONCLUSION

The plaintiff's motion for judgment on the administrative record [#36] is GRANTED insofar as the matter is remanded, and the defendant's motion for judgment on the record [#34] is DENIED. This matter is remanded to the Plan Administrator for further proceeding consistent with this opinion.

ENTERED: /s/
UNITED STATES MAGISTRATE JUDGE

DATE: 3/15/10